UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Robert L. Mack, | ) | C/A No. 4:10-567-HMH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| Federal Bureau of Prisons; | ) | |
| John R. Owen, Warden; and | ) | |
| Dr. Kristi Brantley Drug | ) | |
| Program Coordinator, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Robert L. Mack, filed this action on March 11, 2010, alleging various claims for violations of his constitutional rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] The plaintiff is an inmate currently housed at the Federal Correctional Institution in Elkton, Ohio ("FCI-Elkton"). At the time of the allegations raised in the complaint, the plaintiff was incarcerated at Federal Correctional Institution in

---

[1] In Bivens, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983. Harlow v. Fitzgerald, 457 U.S. 800, 814-820 (1982). Case law involving § 1983 claims is applicable in Bivens actions and vice versa. *Id.*. *See also* Osabutey v. Welch, 857 F.2d 220, 221-223 (4th Cir.1988).

Williamsburg, South Carolina ("FCI- Williamsburg"). Before the undersigned is the defendants' motion to dismiss, or, alternatively, motion for summary judgment. (Doc. # 31.)[2]

The defendants filed a motion for summary judgment on October 27, 2010, along with a memorandum and exhibits in support of said motion. (Doc. #31.) Because the plaintiff is proceeding pro se, he was advised on or about October 28, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of the procedure for summary judgment and the possible consequences if he failed to respond adequately. (Doc. # 33.)   The plaintiff filed a response opposing the defendants' motion on December1, 2010. (Doc. #40.)  On the same date, the plaintiff also filed a motion for an order allowing the defendants to view an exhibit, a copy of the cover of a booklet entitled "Freedom from Drugs," which he filed with his response. (Doc. #41.)[3]

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

As previously stated, the defendants filed a motion to dismiss, or alternatively for summary judgment. As matters outside of the pleadings were submitted by the parties, the undersigned will treat this motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972);

---

[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

[3] This booklet is published by the Bureau of Prisons ("BOP") and, because this booklet states that is illegal to copy it, the plaintiff has filed only a copy of the cover as an exhibit.  (Pl.'s Mem. Opp. Summ. J. Mot. at 16; Pl.'s Mot. at 1.)   The plaintiff apparently filed this motion in an effort to ensure that the defendants view the entire booklet.  (Pl.'s Mot. at 1.)

Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir.

1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges the defendants conspired to violate his Eighth and Fourteenth Amendment rights when he was denied admission to the 500-hour Residential Drug Treatment Program ("RDAP") at the FCI-Williamsburg. (Am. Compl. at 2.)  He alleges he has suffered loss of sleep and "difficult and painful emotional anxiety." (Am. Compl. at 4.)  He seeks $1,000,000.00 in damages. *Id.*

On December 15, 2006, during the plaintiff's initial screening upon his arrival at FCI-Williamsburg, the plaintiff indicated that he did not have a history of substance abuse. (Defs.' Mem. Supp. Summ. J. Mot. Ex. D at 1.)  Additionally, the plaintiff was arrested for his current offense on April 11, 1991, and in his pre-sentence report, it is noted that "[h]e candidly admits to having used marijuana from 1979 to 1986; and having last used cocaine in January of 1990." (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 4 at 3.)

While at the FCI-Williamsburg, on June 22, 2009, the plaintiff completed a 40-hour non-residential drug program. (Pl.'s Mem. Opp. Summ. J. Mot. Attach. # 2 at 1.) On August 6, 2009, however, the plaintiff applied for admission to the 500-hour RDAP at FCI-Williamsburg. *Id.* at 2. On September 9, 2009, the defendant Dr. Krisit Brantley told the plaintiff that he was being denied admission into the RDAP because there was no evidence that he had a prior drug problem within twelve months of his arrest. (Am. Compl. at 3; Defs.' Mem. Supp. Summ. J. Mot. Ex. D at 3.) He alleges he was told he could demonstrate a substance abuse problem through other means, including a report from medical staff documenting physical evidence of drug use such as track marks. (Am. Compl.) On October 1, 2009, medical staff examined the plaintiff and documented evidence of old track marks on both arms. (Am. Compl. Attach. # 3; Defs.' Mem. Supp. Summ. J. Mot. Ex. C at 5-6.) On October 14, 2009, this information was relayed to Dr. Brantley. (Am. Compl. at 3; Defs.' Mem. Supp. Summ. J. Mot. Ex. D at 3.) Dr. Brantley noted that while there was physical evidence of "old track marks," this was not sufficient to substantiate drug use within the twelve months prior to the plaintiff's incarceration. (Am. Compl. at 3; Defs.' Mem. Supp. Summ. J. Mot. Ex. D at 4.) While the plaintiff was excluded from the RDAP, it was noted he could be referred for non-residential drug programs. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 4 at 2.)

The plaintiff appealed the decision by filing a grievance with defendant Warden Owen. (Am. Compl. at 3; Defs.' Mem. Supp. Summ. J. Mot. Ex. C at 1-2.) Owen affirmed and the plaintiff appealed and, at each level of review, the decision to deny him admission to the RDAP was affirmed. *Id.*

Four months after the filing of this action, on July 5, 2010, the plaintiff provided a urine sample for drug analysis and it tested positive for cannabinoids, or marijuana. The plaintiff was

charged with using narcotics and a disciplinary hearing was held on July 16, 2010. The plaintiff admitted he had "relapsed." He was found guilty and sanctioned with the loss of 40 days of good conduct time, loss of commissary and visiting privileges for 365 days, and placed in disciplinary segregation for 60 days.

## C.  ANALYSIS[4]

Initially, the undersigned notes that the BOP is not a proper party in this action. A <u>Bivens</u> cause of action is available only against federal officials in their individual capacities. <u>See Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001). Thus, a <u>Bivens</u> suit will not lie against the BOP. <u>See FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994) ( holding <u>Bivens</u> suits cannot be brought against agencies of the federal government); <u>Howard v. Fed. Bureau of Prisons</u>, 198 F.3d 236 (4th Cir.1999) (unpublished) (holding BOP cannot be sued under <u>Bivens</u>). The Plaintiff apparently agrees and has requested that the BOP be dismissed without penalty. (Pl.'s Mem. Opp. Summ. J. Mot. at 3.)[5] Accordingly, the BOP should be granted summary judgment.

**1. Respondeat Superior Liability**

The plaintiff's claims against Warden Owen appear to be premised solely upon his affirmance of Dr. Brantley's decision not to allow the plaintiff to participate in the RADP.

---

[4] At the threshold, the undersigned notes the defendants concede that the plaintiff exhausted his administrative remedies.   (Defs.' Mem. Supp. Summ. J. Mot. at 5.)

[5] The Plaintiff contends that, along with a <u>Bivens</u> claim,  he can bring a claim under the Federal Torts Claims Act ("FTCA") against the BOP. (Pl.'s Mem. Opp. Summ. J. Mot. at 2.) However, a federal agency cannot be sued under the FTCA. <u>Holmes v. Eddy</u>, 341 F.2d 477 (4th Cir. 1965) (holding that federal agencies cannot be sued under the FTCA); <u>see also</u> 28 U.S.C. § 1346(b) (conferring jurisdiction on courts for tort claims only "against the United States"). Thus, even if the Plaintiff's complaints are viewed as bringing a claim under the FTCA, the BOP is not the appropriate defendant in such an action.

However, in a Bivens suit, there is no respondeat superior liability. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). "Instead, liability is personal, based upon each defendant's own constitutional violations." *Id.* at 402. (holding that plaintiff's Bivens suit failed because there was no allegation that any of the defendants were personally involved in the unconstitutional conduct). A bare allegation that someone in a supervisory authority has violated a plaintiff's constitutional rights without any personal contact with the plaintiff, is not sufficient to state a Bivens claim. See Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 38 (8th Cir. 1995) (reasoning that "[t]he general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability"). "Merely denying a prisoner's grievance is insufficient to establish personal involvement." Hatzfeld v. Eagen, 2010 WL 5579883, at *5 (N.D.N.Y. 2010) (internal quotation marks omitted). *See also* Rivera v. Kuhn, 2011 WL 917504 (M.D.Pa. 2011)(holding merely ratifying departmental disciplinary actions does not impose liability).

Accordingly, to the extent that the plaintiff is asserting that defendant Warden Owen was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a Bivens claim. See Paige v. Kuprec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Accordingly, the defendant Warden Owen should be granted summary judgment.

**2. Due Process Violations**

The plaintiff alleges the defendants conspired to violate his constitutional rights when he was denied the opportunity to have an interview regarding his participation in the RDAP. (Am. Compl. at 2.)

Pursuant to 18 U.S.C. § 3621(b), the BOP is to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition." Section 3621(e) specifically directs the BOP to institute RDAPs, and provides an incentive of potential reductions in sentences for inmates who successfully complete the program. However, any sentence reduction is discretionary on the BOP's part. 18 U.S.C. § 3621(e)(2)(B); Lopez v. Davis, 531 U.S. 230, 241 (2001).

Courts considering whether an inmate has a liberty interest in participation in a RDAP have concluded that no such liberty interest exists. See Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Cook v. Wiley, 208 F.3d 1314, 1322-23 (11th Cir. 2000); Bennett v. Outlaw, ---F.Supp.2d ----, 2009 WL 3808528 *1-2 (E.D.Ar. Nov. 13, 2009) (slip op.); Hollman v. Lindsay, 2009 WL 3112076 (E.D.N.Y. Sept. 25, 2009); Gibson v. Federal Bureau of Prisons, 121 Fed.Appx. 549, 551 (5th Cir.2004) (unpublished); Kotz v. Lappin, 515 F.Supp. 143, 148-50 (D.D.C. 2007). Because the plaintiff does not have a liberty interest in his participation in the RDAP, he cannot state a due process claim based on his exclusion from that program without a hearing or interview.

Similarly, to the extent the plaintiff contends that § 3621 confers some statutory right to participate in the RDAP, this contention is also without merit. The undersigned is aware of no authority that construes § 3621 as conferring upon an inmate a private right of action based on expulsion or exclusion from an RDAP program or the BOP's failure to offer any particular substance abuse treatment to an inmate. Indeed, the nature and extent of substance abuse treatment that the BOP offers to a particular prisoner is a subject "left to the discretion of the Bureau of Prisons." U.S. v. King, 101 Fed.Appx. 958, 959 (5th Cir. 2004) (unpublished). Second, assuming that the statute permits an inmate to claim monetary damages based on the BOP's failure to offer "appropriate

substance abuse treatment," the plaintiff has not alleged facts showing that the BOP has not offered him any substance abuse treatment, but only that it has excluded him from treatment in the form of a RDAP. In fact, the record shows that the plaintiff completed a forty-hour program while at FCI-Williamsburg. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3 at 10-11.) Furthermore, the record shows that "[the plaintiff] will be referred for Nonresidential Drug Abuse Treatment." *(Id.* at 2.) Accordingly, the plaintiff's claims based on his exclusion from an RDAP fail to state a cognizable due process claim and the defendants should be granted summary judgment on these claims.

**3. Equal Protections Claims**

The Equal Protection Clause requires the Government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state a claim for an equal protection violation in a prison setting, an inmate must demonstrate "that he was treated differently from others similarly situated as a result of intentional or purposeful discrimination . . . . [The inmate] must also show that the disparity in treatment cannot survive the appropriate level of scrutiny, which in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not reasonably related to any penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted). Furthermore, in the absence of a fundamental right or a protected class, equal protection only requires that a regulation which results in unequal treatment of an inmate bear some rational relationship to a legitimate penological interest. See McGinnis v.. Royster, 410 U.S. 263 (1973).

In his pre-sentence report, it was noted that the plaintiff "candidly admitp[ed] to having used marijuana from 1979 to 1986; and having last used cocaine in January of 1990." (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 31 at 4.) The plaintiff was arrested for his current offense on April

9

11, 1991. Here, the plaintiff has made no attempt to show that he has been treated differently than other inmates who have no evidence of drug use within 12 months of arrest or that his treatment was a result of intentional or purposeful discrimination. A "plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently." Newell v. Brown, 981 F.2d 880, 887 (6th Cir. 1992). The plaintiff must show that he/she "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Id*. (Internal citations omitted). When the plaintiff has not made such a showing, no cognizable equal protection claim has been stated. *Id.* An equal protection claim which is not supported by factual allegations should be dismissed as being only conclusory. See Blackburn v. Fisk University, 443 F.2d 121 (6th Cir. 1971). The plaintiff has offered nothing outside of the conclusory statements that his equal protection rights have been violated. Therefore, the plaintiff's complaint fails to state a violation of his equal protection rights, and accordingly, the defendants should be granted summary judgment on this claim.

**4. Deliberate Indifference to Serious Medical Needs**

The plaintiff alleges that his Eighth Amendment rights were violated when he was not allowed to participate in an RDAP. (Pl.'s Mem. Opp. Summ. J. Mot. at 12.) He specifically alleges the defendant Dr. Brantley abused her discretion and treated him with deliberate indifference when she deprived him of the opportunity to get help for his drug problem. *Id.* He alleges that because of her decision, he became depressed and started to use drugs again. *Id.* at 13.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty

to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. <u>Estelle</u>, 429 U.S. 104; <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994); <u>Sosebee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" <u>Coppage v. Mann</u>, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (internal citations omitted)

Furthermore, the Fourth Circuit has held that to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. <u>Miltier</u>, 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles, the plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his course of medical treatment against defendant Warden Owen, who is not medical personnel. Furthermore, as the plaintiff was offered non-residential drug abuse programs and in fact completed such a program while at FCI-Williamsburg, there is no evidence in the record that the medical defendants were aware that the plaintiff needed medical attention and denied him such. Accordingly, the defendants should be granted summary judgment on the plaintiff's medical indifference claims.

**5. Conspiracy Claims**

The plaintiff alleges a conspiracy claim against the defendants. However, any claim made by plaintiff with regard to a conspiracy fails. "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir.1 996). To establish a civil rights conspiracy, "[the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* at 421. The "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* Isolated acts by defendants that fail to evidence a shared understanding will not suffice to survive a motion for summary judgment. *Id.* at 421-23. The plaintiff has failed to provide specific evidence of a conspiracy, fails to make any specific allegations, and fails to show a connection between the actions of the defendants. Therefore, it is recommended that the defendants be granted summary judgment on his conspiracy claims.

### D.  QUALIFIED IMMUNITY

The defendants also argue they are entitled to qualified immunity. Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct

13

>> does not violate clearly established statutory or constitutional rights
>> of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, all of the defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that summary judgment be granted as to all defendants.

### III.  CONCLUSION

Based on the above reasoning, it is RECOMMENDED that the defendants' motion for summary judgment (doc. #31) be GRANTED.

It is FURTHER RECOMMENDED that plaintiff's motion for an order allowing the defendants to review an exhibit (doc. #41) be DENIED as moot.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 23, 2011
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**